## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEAU CHERMER, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2:21-cv-1079 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Patricia L. Dodge |
| SUPERINTENDENT, SCI GREENE, | ) | |
| *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM

Pending before the Court[1] is a petition for a writ of habeas corpus filed by Beau Chermer ("Petitioner") under 28 U.S.C. § 2254. Petitioner challenges the judgment of sentence imposed on him by the Court of Common Pleas of Beaver County on October 19, 2015, at criminal docket numbers CP-04-CR-1125-2012 and CP-04-CR-1130-2012. For the reasons below, the Court will deny the petition and will deny a certificate of appealability.

### I.    Relevant Background

At CP-04-CR-1125-2012, Petitioner was convicted at a bench trial of murder of the second degree. At CP-04-CR-1130-2012, Petitioner pleaded guilty to 16 counts arising from the same incident, including aggravated assault, burglary, robbery, and criminal conspiracy.

The trial court summarized the facts adduced at trial as follows:

At trial, the Court heard testimony from multiple medical professionals regarding the cause of the victim's (Daniel J. Santia) death. After being tortured and beaten by [Petitioner] and the Co-Defendant during a home invasion, the eighty-one (81) year old victim suffered a traumatic brain injury. The victim was found the day after the attack and was rushed to the hospital. Testimony provided that the victim

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

1

suffered from a pre-existing heart condition, requiring him to take Coumadin, a blood thinner, to prevent blood clots. Due to the severe brain injury, the treating physicians suspended the victim's normal medication and briefly took him off of the Coumadin to help treat the brain trauma. Testimony provided by Doctor Christina Toevs, the Medical Director of the Trauma Intensive Care Unit of Allegheny General Hospital, explained that it was customary to stop prescribing Coumadin for thirty (30) days following severe brain injuries in patients. The victim ultimately died twenty-one (21) days after the brutal attack.

(ECF No. 16-3 at 32) (footnote omitted).

Petitioner was sentenced to life imprisonment on the murder conviction and an aggregate sentence of 19 to 50 years' imprisonment for three conspiracy convictions, to be served consecutively to the life sentence. No further sentences were entered for the remaining 13 charges to which he pleaded guilty.

On direct appeal, the Superior Court of Pennsylvania affirmed his judgment of sentence for the murder conviction at CP-04-CR-1125-2012 but vacated the aggregate judgment of sentence on the conspiracy convictions and remanded for resentencing on a single conspiracy count only. *Commonwealth v. Chermer*, 168 A.3d 313 (Pa. Super. 2017) (unpublished memorandum). The Supreme Court of Pennsylvania denied Petitioner's petition for allowance of appeal on August 29, 2017. *Commonwealth v. Chermer*, 170 A.3d 1015 (Pa. 2017). On December 15, 2017, Petitioner was resentenced for the conspiracy conviction.

On August 16, 2017, Petitioner filed a petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. This petition was ultimately denied on July 1, 2019. The Superior Court of Pennsylvania affirmed the order denying the PCRA petition on July 17, 2020. *Commonwealth v. Chermer*, 239 A.3d 74 (Pa. Super. 2020) (unpublished memorandum). Petitioner did not seek review in the Pennsylvania Supreme Court.

On August 13, 2021, Petitioner filed a petition for writ of habeas corpus in this Court. (ECF No. 1.) That petition was amended on October 5, 2021, (ECF No. 3) and served on Respondents. Respondents filed an answer. (ECF No. 16.)

On July 8, 2022, Petitioner filed a second PCRA petition. That petition was denied on December 23, 2022, as untimely.

On June 28, 2023, with permission from this Court, Petitioner filed an amended petition for writ of habeas corpus. (ECF No. 26.) Respondents filed an answer to the amended petition. (ECF No. 27.)

On July 27, 2023, this Court stayed this case pending the conclusion of Petitioner's PCRA proceedings in state court. (ECF No. 28.) On August 29, 2023, Petitioner's appeal from the denial of his PCRA petition was dismissed for failure to file a brief. This Court lifted its stay on November 28, 2023. (ECF No. 30.)

On April 9, 2024, Petitioner filed a reply (ECF No. 35), and a motion requesting an evidentiary hearing (ECF No. 34.). Respondents filed a response in opposition to the motion. (ECF No. 38.)

The petition (ECF No. 26) and the motion (ECF No. 34) are ripe for consideration.

## II.    Discussion

### A.    Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state court judgment. This statute permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). It is Petitioner's burden to prove that

he is entitled to the writ. *See, e.g.*, *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

B. Statute of limitations

Respondents argue, among other things, that Petitioner's claims are barred by the applicable statute of limitations. (ECF No. 27 at 4-8.)

1. Legal considerations

In 1996, Congress made significant amendments to the federal habeas statutes with the enactment of AEDPA. Among other things, AEDPA set a one-year limitations period for filing a federal habeas petition. *Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005). AEDPA's one-year statute of limitations is codified at 28 U.S.C. § 2244(d). The date on which AEDPA's limitations period commences is determined on a claim-by-claim basis. *Fielder v. Varner*, 379 F.3d 113, 118-22 (3d Cir. 2004).

AEDPA also provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance' .... In other words, until the application has achieved final resolution through the State's post-conviction procedures[.]" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002).

2. Petitioner's claims

In the petition *sub judice*, Petitioner raises claims of constitutional violations stemming from: (1) the withholding of impeachment evidence; (2) trial counsel's failure to object to at trial to certain testimony from the victim's daughter; (3) trial counsel's failure to object at trial to the

prosecution's closing argument; (4) trial counsel's failure to object at trial to another part of the prosecution's closing argument; (5) trial counsel's failure to consult with and retain a cardiologist to testify at trial; and (6) the cumulative effect of trial counsel's ineffective assistance.

a.    Trial-related claims (Claims 2-6)

The statute of limitations for Petitioner's trial-related claims began to run on the date his judgment of sentence[2] became final, in accordance with § 2244(d)(1)(A). As discussed above, Petitioner's direct appeal concluded when his petition for allowance of appeal in the Supreme Court of Pennsylvania was denied on August 29, 2017. Petitioner did not subsequently file a petition for a writ of certiorari with the Supreme Court of the United States. Thus, the judgment of sentence became final under both state and federal law on or around November 27, 2017, when the time for him to file a petition for a writ of certiorari expired. Sup. Ct. R. 13 (time for petitioning); *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 (2012). The one-year limitations period for Petitioner's trial-related claims would normally have begun to run on that date.

However, Petitioner filed his first PCRA petition on August 16, 2017, before his judgment of sentence became final. As explained above, that petition was denied, and the Superior Court of Pennsylvania affirmed the order denying the PCRA petition on July 17, 2020. Under § 2244(d)(2), this first PCRA proceeding statutorily tolled ADEPA's limitations period until August 17, 2020, the deadline for filing a timely request for allowance of appeal in the Pennsylvania Supreme Court. *Swartz v. Meyers*, 204 F.3d 417 (3d Cir. 2000) (holding that a PCRA petition is "pending" during the time between the Pennsylvania Superior Court's ruling and the expiration of time for seeking allowance of appeal from the Pennsylvania Supreme Court even if no timely request for allowance

---

[2] The relevant judgment of sentence with respect to these trial-related claims is the life sentence imposed at CP-04-CR-1125-2012 following the non-jury trial.

of appeal was filed); 1 Pa.C.S. § 1908 (omitting from computation of time period the last day where that day is a weekend or holiday); Pa.R.A.P. 1113(a) (providing 30-day time period for filing petition for allowance of appeal after entry of Superior Court order).

Thus, AEDPA's limitations period began to run the next day, on August 18, 2020, and expired on August 18, 2021. The instant petition raising these claims was filed on June 28, 2023, nearly two years later. Accordingly, these claims are untimely.[3]

Petitioner argues that this petition is timely filed based on the August 13, 2021, filing date of his original petition. (ECF No. 26 at 23.) Indeed, his original habeas petition was filed within the relevant limitations period and the Federal Rules of Civil Procedure permit amendment of that petition;[4] however, the timeliness of the claims raised in the amended petition depends on whether they relate back to the claims set forth in the original petition. *Wilkerson v. Superintendent Fayette State Corr. Inst.*, 871 F.3d 221, 236-37 (3d Cir. 2017).

The United States Supreme Court has explained that "[a]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground

---

[3] Petitioner's second PCRA petition does not qualify as a "properly filed application for State post-conviction or other collateral review" under § 2244(d)(2) because the state court determined that it was untimely. *Pace*, 544 U.S. at 417 ("Because the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)."); *id.* at 414 ("When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2).") (internal quotation marks and bracketed text omitted). Further, the Supreme Court has held that AEDPA's limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner is entitled to equitable tolling only if he shows both that: (1) he has been pursuing his rights diligently; and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Id.* at 649. Petitioner does not argue that he is entitled to equitable tolling, nor has he directed the Court to anything in the record to support a determination that equitable tolling would be appropriate in this case.

[4] Rule 15(c)(1) provides, in relevant part, that "[a]n amendment to a pleading relates back to the date of the original pleading when: ... (B) the amendment asserts a claim ... that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading[.]"

for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 648 (2005). The Supreme Court rejected the decisions of those courts of appeals which "allow relation back of a claim first asserted in an amended petition, so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence." *Id.* at 656. "Under that comprehensive definition," the Supreme Court explained, "virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto." *Id.* at 656-57. Rule 15's relation back provision, the Supreme Court further explained, "relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims." *Id.* at 659 (internal quotations and citation omitted). It held that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Id.* at 664. *See also Wilkerson*, 871 F.3d at 237 ("The [Supreme Court in *Mayle*] elaborated that two claims merely arising from the same 'conviction or sentence' cannot be enough to satisfy the relation back standard and that, in order to properly relate to one another, the claims in the amendment and the claims in the original petition must be 'tied to a common core of operative facts.'")

In Petitioner's original petition, he raised two claims: a double jeopardy claim and a claim of trial counsel's ineffectiveness in advising him to enter a plea in the case at CP-04-CR-1130-2012. The double jeopardy claim stemmed from a jury trial in which Petitioner and his co-defendant were jointly tried for crimes related to the robbery and death of Mr. Santia. At that trial, a detective incorrectly authenticated certain photographs and a mistrial was granted. It was after this mistrial that Petitioner entered the plea at CP-04-CR-1130-2012 and proceeded to the non-

jury trial at CP-04-CR-1125-2012. The claims raised in the original petition thus concerned a discrete period following the mistrial and before the entry of the plea.

The operative facts underlying the trial-related claims made in the instant petition concern events arising in preparation for and at trial, *i.e.*, the period after the entry of the plea. These facts are thus not related to the operative facts underlying his claims in his original petition.

Because Petitioner's trial-related claims are distinct from the claims he raised in the original petition, they do not relate back to the date that petition was filed. Accordingly, they cannot escape the time-bar via relation back to the original petition.

> b.    *Brady* claim (Claim 1)

In Claim 1, Petitioner asserts that the prosecution withheld exculpatory impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), concerning an agreement between the Commonwealth of Pennsylvania and a testifying witness, Slade Unis. (ECF No. 26 at 3-6.) Petitioner claims:

> At Petitioner's trial states [sic] witness testified that he was to receive no favorable treatment for his 'significant' testimony as it went to the only testimony as to motive for the crime. The Commonwealth failed to correct this false testimony nor did they disclose this favorable impeachment evidence prior to or after trial. Slade Unis had his own criminal charges unrelated to Petitioner's where once Petitioner finally was able to obtain a true copy of Mr. Unis' sentencing transcripts he learned that the WHOLE reason for Mr. Unis' plea ag[]reement was his SIGNIFICANT testimony against Petitioner.

(*Id.* at 29.)

To the extent that Petitioner is asserting that this claim is based on newly discovered evidence, under 28 U.S.C. § 2244(d)(1)(D), the limitations period would have begun to run "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Although Petitioner does not specifically identify the date he was "finally was able to obtain a true copy of Mr. Unis' sentencing transcripts," the PCRA court

did so. In its opinion of December 23, 2022, dismissing Petitioner's second PCRA petition, the

court held:

> In support of his initial PCRA filing, the Petitioner claims that he was not told of Unis' plea agreement until he received a letter from a friend in May of 2022. Additionally, in support of his PCRA filing, Petitioner included an excerpt of a court transcript for proceedings relating to Unis' plea colloquy, as Case No. 1246-2015. This claim is disingenuous.
>
> Despite the claim that the Unis information was not available to the defendant until May 22, 2022, the docket entries in this case reveal that on September 27, 2017, the defendant filed a correspondence requesting approval to get the transcripts for the cases filed against Unis at case numbers 2399-2015 an[d] 1246-2015. He then filed a motion to obtain those same transcripts and on October 10, 2017, an Order was issued granting the request of defendant to obtain the Unis transcripts.
>
> The Docket Entries for the case of Commonwealth v. Slade Unis, Beaver County case No. 1246-2015 reveal that the Petitioner sent a "Case Correspondence Letter" requesting a copy of the sentencing transcripts related to this Slade Unis' trial on September 24, 2017. This letter was subsequently received and filed by the Clerk of Courts for the Court of Common Pleas of Beaver County on September 27, 2017. On October 10, 2017, an Order was issued Granting a Motion for Transcript of Sentencing. Payment for the transcripts in the amount of $63.00 was made by "Mark Chermer" on October 25, 2017. The Transcript subsequently became available on November 6, 2017.
>
> Also, Petitioner admits that he believed Unis had an agreement with the prosecution to testify. However, he claims that he did not know of the agreement until May of this year. Unis' potential acknowledgement of an agreement to testify cannot serve as after-discovered evidence where Petitioner was aware that Unis entered a plea on December 21, 2015 and the information regarding the potential plea arrangement was mentioned that day on the record. The alleged reference was recorded that day and available for transcription on that day. At the time that Unis took his plea, the defendant already suspected that Unis was offered a plea agreement which required Unis to testify against the defendant. Yet it was not until September 24, 2017 that the defendant requested that transcripts of the Unis December 21, 2015 plea hearing at case number 1246-2015.
>
> In light of the availability of the transcripts made available to the Petitioner in November of 2017, this court finds that Petitioner was aware of the content of the transcripts for several years, at least from November 6, 2017, when the transcript was available due [to] a request that was initiated by the defendant. This transcript was available even during the presentation of the original PCRA proceedings. Thus, the court concludes that the second PCRA claim is not timely as the claims do not qualify as a newly discovered facts under [the PCRA.]

(ECF No. 27-10 at 47-49.)

Under § 2254(e)(1), the PCRA court's factual determinations are presumed to be correct unless Petitioner rebuts that presumption by clear and convincing evidence. *Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010). He has not done so with regard to these findings.

Accordingly, accepting the state court's determination that Petitioner was aware of the factual predicate of this claim from at least November 6, 2017, this claim is also time-barred.

3.     Motion for Evidentiary Hearing

As set forth above, Petitioner has filed a motion requesting an evidentiary hearing on the merits of his claims. (ECF No. 34.) AEDPA permits evidentiary hearings on habeas review, but only in limited circumstances. *Palmer*, 592 F.3d at 392. (citations omitted). Where a petitioner is not barred from obtaining an evidentiary hearing by § 2254(e)(2) (pertaining to failure to develop the record in state court), the decision to grant such a hearing rests in the discretion of the district court. *Id.* at 393. In determining whether to hold an evidentiary hearing, courts should "consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). However, if the record refutes the petitioner's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing. *Id.*

In this case, no development of the factual record on Petitioner's claims would result in habeas relief where such relief is precluded by the time-bar. Accordingly, the motion will be denied.

## III.    Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a

circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from … the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Jurists of reason would not find it debatable whether Petitioner's claims should be denied as time-barred. Thus, a certificate of appealability will be denied with respect to his claims.

## IV.    Conclusion

For these reasons the Court will deny the petition, the motion, and a certificate of appealability.

Appropriate Orders follow.


Date: June 7, 2024                                    /s/ Patricia L. Dodge
                                                      PATRICIA L. DODGE
                                                      United States Magistrate Judge